Good morning, Your Honors. My name is Harini Raghupathy from the Federal Defenders of San Diego, for the appellant Mr. Brigido Lopez-Chavez. Under Moncrieff v. Holder, Mr. Lopez's Missouri conviction for possession with intent to deliver marijuana is not a drug trafficking aggravated felony because it fails to establish that the offense involved either remuneration or more than a small amount of marijuana. Accordingly, Mr. Lopez was removed when he should not have been, and he clearly suffered prejudice. This Court should therefore vacate Mr. Lopez's conviction with directions to dismiss Count 1 of the indictment. The government doesn't dispute that under Moncrieff, Mr. Lopez's conviction is overbroad. Instead, it argues that Moncrieff does not apply because it wasn't part of the applicable law at the time of the removal hearing in 2003. And it also argues that Mr. Lopez hasn't exhausted his administrative remedies. So I'll take both of those points in turn. First, this Court should look to Moncrieff in holding that Mr. Lopez wasn't removable as charged. And in arguing otherwise, the government relies on United States v. Vidal-Mendoza. But Vidal-Mendoza is inopposite for three reasons. First, Vidal-Mendoza only concerned the scope of an immigration judge's duty to advise an alien of his or her apparent eligibility for discretionary relief. Vidal-Mendoza never addressed the separate question of how the determinations of removability are to be made, and certainly did not say that such determinations are to be confined to the law at the time of the removal hearing. And there are, in fact, compelling reasons why this Court shouldn't extend Vidal-Mendoza to determinations of removability, including creating an intra-circuit conflict with United States v. Camacho-Lopez. Second, even assuming that Vidal-Mendoza's time of removal rule applies, here the law at the time of the removal hearing did not foreclose Mr. Lopez's claim that he wasn't an aggravated felon. The Seventh Circuit, who had jurisdiction over the potential petition for review, hadn't yet answered the question of how state drug crimes would be categorized as an aggravated felony. And while the BIA had addressed the question just the year before, in 2002, ultimately that case isn't considered part of the law at the time of the hearing, because the BIA was considering the meaning of a drug trafficking crime, something for which it wouldn't have been accorded Chevron deference. Third, the state of the law at the time of Mr. Lopez's hearing was very different from the state of the law either in Vidal-Mendoza or its predecessor case, Lopez-Velasquez. In both of those cases, the alien was attempting to rely on post-removal precedent that represented a sharp deviation from what at the time of the hearing was a consistent established line of precedent. And that's not the case for Mr. Lopez. In 2003, ultimately, the question of how to categorize state drug crimes was unsettled and in conflict. So the federal courts of appeals themselves were split on the issue, and some of the courts, including this court, had different rules in sentencing cases and in immigration cases. And then the BIA itself issued a bifurcated decision in Yanez-Garcia, where it was going to defer to those circuits that had already addressed the issue. And in those circuits that hadn't addressed the issue, it adopted the so-called majority approach. So unlike in Lopez-Velasquez or Vidal-Mendoza, where there was no suggestion from either the BIA or the courts of appeal that the issue could be answered any differently, here there was a clear suggestion from both the BIA and the courts of appeals that Mr. Lopez wasn't an aggravated felon. The next issue is whether Mr. Lopez has exhausted his administrative remedies. And there are actually three reasons why he's excused from the exhaustion requirement. I think the most basic reason is that the government can't meet its burden to show that Mr. Lopez's decision not to appeal to the BIA was a decision that he made personally, let alone that it was a considered an intelligent decision. And in United States v. Ubaldo Figueroa, this court held that the due process inquiry focuses on whether the alien personally made a decision not to appeal. And here it's undisputed in the record that Mr. Lopez's counsel never consulted with him during the immigration hearing about his right to appeal. Mr. Lopez didn't know he had the right to appeal, and had he known he had that right, he would have exercised that right. And so therefore, counsel's failure to consult with him about the appeal was the reason why an appeal ultimately wasn't pursued. So under Ubaldo Figueroa in United States v. Pro Atovar, that excuses Mr. Lopez from the exhaustion requirement. Second, and relatedly, counsel was also ineffective in failing to consult with Mr. Lopez about his right to appeal. We know from the Supreme Court's decision in Roe v. Flores-Ortega that counsel has a constitutionally imposed duty to consult with a client when there's reason to think that that client would want to appeal. And here there is very much reasons to think Mr. Lopez would want to appeal. By the time of the removal hearing in 2003, he had been an LPR for 13 years. He had extensive family ties to the country. He had property ties in the form of a home in St. Louis. He had steady employment. And so he had a lot riding on his immigration hearing. You have about four and a half minutes left. Do you want to save that time for rebuttal? Sure. Thank you. We'll hear from the government. Okay. Thank you, Your Honors. May it please the Court. Good morning. Mark Rahe for the United States. Your Honor, this case can be affirmed on the failure to exhaust remedies because at the time when one looks Let's start over here. In United States v. Villavicencio Burrell, this Court held that where a represented alien twice reserves the right to appeal but then fails to actually file the appeal, the exhaustion requirement is not met. My opponent argues that that should be excused by ineffective assistance of counsel. But as this Court is well aware, the Supreme Court in Switzerland I'm sorry. Failure to appeal the deportation? The order of removal, yes. The removal. Correct. My opponent would have this Court find that that failure to exhaust should be excused by What would the appeal have done? And the government has viewed nothing because under the controlling BIA precedent of Yanez Garcia, which had been decided a year before, a full year before this removal hearing, a state drug offense was a categorical aggravated felony, basically under two prongs, as long as it prohibited the same acts prohibited by Title 21, and it was a felony under state or Federal law. And if a petition for review had been filed with the Seventh Circuit after that, what would have happened? Yes. What would have been the effect of that? I believe it would have been denied or maybe, you know. Now, wait a minute. Didn't the first time the Seventh Circuit had this question, wouldn't they have ruled for him under that the way they did when they actually got it? I mean, the government's position, that would be speculation, Your Honor. It's not speculation. It's the first time they got the case, the issue. They ruled contrary to the BIA's position. In 2006. Well, first time they got the case. If he had gone to the Seventh Circuit, he would have been the first time they got the case. And not only did they rule against the government, they made it very clear, Judge Posner did, in very strong terms, that the government was wrong. I'll accept all of that, Your Honor, but there's an unshakeable principle of law, which is that for ineffective assistance purposes, counsel is not expected to foresee future changes in the law. He doesn't have to see a change. It wasn't a change. It was the first time the Seventh Circuit was presented with the issue. Well, I don't know if that's a distinction. I mean, we're going to say now that. Well, it's not a distinction. It's not a change. The case had not been presented to the Seventh Circuit. And the other circuits that it had been presented to, like the Ninth Circuit, had taken the same position that the Seventh Circuit took. There was no change as to the law in the Seventh Circuit. The change was that the BIA said, those circuits who haven't decided it, we, the BIA, will take the position that the government wants us to take. But if the circuit takes the opposite position, we'll follow that. And when it was presented to the Seventh Circuit, it took the opposite position. And it didn't change its position. It did it the first time it was presented with it. And had counsel for the Petitioner here taken an appeal, pursued the case, he would have won. I mean, I'll accept that, Your Honor. I still, maybe he gets a different panel. Who knows what that court would have done. But even if I accept that proposition. Well, then we could take that position every time. Every time we issue an opinion, you could say, well, if we had a different panel, we would have gotten a different opinion. And maybe you're right. But that's not the way the law works. But it's also that there's a strong deference in favor or against a presumption of incompetence of counsel, Your Honor. Well, let's go back to 2003. At that point, the state of the law was that amongst the circuit courts of appeals, there were differing views. Correct. And the Seventh Circuit hadn't spoken. Is there any authority that supports the proposition that I hear you arguing that the failure of counsel to proceed with an appeal then is not ineffective assistance of counsel? When it's known there's a split of views and where your circuit hasn't spoken? I'm looking, I don't know off the top of my head, Your Honor. I mean, we cited cases. Well, isn't that the case we have here? I mean, let's take it in pieces. Is it the case in 2003 that the circuit courts were split? Correct. And is it the case in 2003 the Seventh Circuit hadn't spoken? Correct. Okay. The lawyer decides apparently not to bring an appeal. Why isn't that ineffective assistance? Because the one piece that's left out is in 2002, the BIA, which controls the first instance. Well, the first level, but you know the BIA's decision isn't going to control the second level because that's a question as to which the circuit courts are not going to defer to the BIA. It's not a question of immigration law. So I accept the proposition that at the first level, the BIA's spoken. But at the second level, there's nothing. And so there's no appeal. Why isn't that ineffective assistance? Well, I believe I cited a case in my brief. It was the United States versus Bauman. And I'm sure there are other sites for the same proposition. Counsel is not expected to challenge binding law. And the binding law here is important. Well, but we've already established that there wasn't binding law. There was no law in the Seventh Circuit. And the circuit courts were split. So there was at least some respectable view that would have supported the current defendant's position. Right. There was no binding circuit law, but there was binding BIA authority. And if the question is we put ourselves, that this Court puts itself in the shoes of counsel at the time, is it objectively reasonable? Is he expected to become, you know, the Gideon, the one who has to then go against what the en banc BIA has just said the year before? I think the question is, is that objectively unreasonable? And it's not. Is it correct on the facts that counsel did originally say he wanted to appeal or ask for time to appeal? Yeah. He twice reserved the right to appeal. He reserved the right to appeal. Is it true that he didn't consult with his client? We have no evidence to the contrary. It was the declaration of the defendant. There was never any evidence from the actual defense attorney in the records. Okay. So can you think of any reason a competent counsel wouldn't appeal? Yes. In re Giannis Garcia. Which says what? Which was the binding BIA authority from a year before an en banc BIA case which said. Which said it depends on the circuit. In the absence of a circuit position, we're going to say it's a categorical aggravated offense. So why wouldn't you then want to get, if you know you're going to lose if you don't appeal, and that there is no law in the seventh circuit, why in the world wouldn't you appeal? I do not know. But even aside from the failure to exhaust issue, we have the fundamental unfairness question of Vidal-Mendoza. The government's position, our alternative argument is that, again, the state of the position now that this was not a categorical aggravated felony rests on Moncrief, which is decided in May of 2013. No, no, it doesn't rest on Moncrief. It rests on the seventh circuit. For purposes of fundamental unfairness. Yeah. The question is now, because we have this new Supreme Court case, and the defense is saying, well, based on this case that came out just five, six months ago, now we know that 10 years ago the I.J. made the wrong decision. Well, they also know that they would have won if they had gone to the seventh circuit. Be that as it may, Your Honor, the whole premise of the defense argument is that we have to apply the law in effect at the time. At the time of this removal hearing, there was no contrary circuit law, and the BIA, to which the I.J. answered, at least applied the law in the first instance, held squarely that this was an aggravated felony. And I believe my opponent's reasons for trying to distinguish Vidal-Mendoza in the context of removability versus advisal of relief is an untenable distinction. What that would basically mean is that you have two areas, two bodies of law that govern the legality of any prior removal. If it comes to advisals of relief, my opponent will concede, oh, you don't look to any recent law, you only look at the law at the time. But when it comes to determinations of removability, suddenly the result is different. And the government would submit that there's no rational purpose for that distinction. The same legal issue, the I.J.'s determine, or the I.J.'s responsible not only for making advisals of relief, but also determinations of removability. In this case, whether it's an aggravated felony is a pure legal issue, you apply the categorical approach. If Vidal-Mendoza says we don't expect I.J.'s to be clairvoyant, at the time that I.J. applied the law in front of him, the only precedent he had was en banc BIA authority, which says that this is a categorical aggravated felony. And I don't believe my opponent has ever disputed that. In fact, in one of her supplemental briefs, she says, Yanis Garcia's on-point authority that this was an aggravated felony at the time. Now, I know she's made the argument, well, you only look to BIA law if it warrants Chevron deference. We cited a case a few months ago, this Court rejected that when it held in United Rodriguez, which was a BIA case, as part of the governing law at the time, even though this Court had already said that that didn't warrant Chevron deference. So here, this I.J., with the concession of removability, with an en banc BIA case, the ink was dry from a year before, made a call and said this is a categorical aggravated felony. For that reason, we don't believe that the government, or the government contends that this removal was not fundamentally unfair for purposes of that third 1326 deal. Unless the Court has any further questions. Thank you. Government would submit. Regarding the exhaustion, if this Court is reluctant to reach the issue of ineffective assistance of counsel, there are two other grounds on which exhaustion can be found. One is that, as I mentioned before, Mr. Lopez's decision not to appeal wasn't a decision made. It was a decision made by his immigration attorney without consulting him. And under Ubaldo Figueroa, that lack of consultation alone is grounds to excuse Mr. Lopez from exhaustion. And then also, the immigration judge failed to advise. And how do we know that's the case? That he wasn't consulted. We have his declaration, which is uncontroverted. It's on page 145 of the exercise. How could they controvert it? Excuse me? How could they controvert it? How could the other side controvert it? Even if they could find a lawyer, what could the lawyer say? I mean, he's bound by attorney-client privilege not to disclose any communications between him and the client. So, you know, saying it's uncontroverted doesn't really add anything. It would inherently have to be uncontroverted. Has your client waived attorney-client privilege on that issue? Not that I'm aware of, no. So what could they do? Get a mind reader? Well, that's true. But I think then if this court is unwilling to look at that, the fact that the immigration judge failed to advise Mr. Lopez of his apparent eligibility for two forms of discretionary relief would also excuse him. But, and that's a ground that this court then doesn't have to enter into the realm of whether counsel consulted with him or not. What discretionary relief, based on the law that was in effect at that time, what discretionary relief could he have obtained? Well, under the law at the time, there was Yanez-Garcia, which was the BIA case that my colleague was discussing. So from the IJ's perspective, that door is closed. No, that's incorrect, actually, because in Vidal-Mendoza, which is the case that we've been talking about, it talks about Leon Paz. And in Leon Paz, it was a very similar procedural posture. At the time of the removal hearing, there was a BIA case that said the alien was ineligible for discretionary relief. And this court said that that didn't eliminate the IJ's duty to have to advise the alien of relief, because that was a question of statutory retroactivity, one for which the BIA wouldn't have been accorded Chevron deference. And likewise here, we have Yanez-Garcia, but that's not a case for which the BIA would be accorded Chevron deference, because the BIA was construing the meaning of the federal criminal code. And so applying the same logic from Leon Paz in footnote 6 in Vidal-Mendoza, the IJ had a duty to advise Mr. Lopez that he had a reasonable possibility of relief, given that the Seventh Circuit had not yet addressed the issue. Okay. Thank you. Thank you. The case is argued and submitted.
judges: Kozinski, Reinhardt, Clifton